### A98A0902. McKAY v. THE STATE.
(507 SE2d 484)

RUFFIN, Judge.

A jury found Tyrone McKay guilty of selling marijuana in violation of OCGA § 16-13-30 (j) (1) (Count 1) and selling marijuana within 1,000 feet of a housing project in violation of OCGA § 16-13-32.5 (Count 2). The trial court sentenced McKay as a recidivist. McKay appeals, asserting (1) there was insufficient evidence to support his convictions, (2) Count 2 of the indictment was insufficient, and (3) the State failed to prove the voluntariness of prior pleas for use in recidivist sentencing. For reasons which follow, we affirm.

1. " 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99

SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State*, 229 Ga. App. 465-466 (1) (494 SE2d 257) (1997).

Viewed in this light, the record shows undercover agents Quarterman and Lucas drove past an unoccupied building located at 603 Emerald Drive. Agent Quarterman noticed three individuals seated in a white Buick which was parked in front of the building. He also saw Tyrone McKay and Akeem Williams standing outside of the car facing one another. Quarterman testified that, after parking behind the Buick, he "observed Mr. McKay pass Mr. Williams one bag of marijuana, and . . . Mr. Williams pass Mr. McKay some paper currency." Quarterman witnessed the exchange from a distance of approximately ten to fifteen feet. Quarterman testified that McKay and Williams were standing approximately 20 feet from the building located at 603A Emerald Drive at the time of the exchange.

When Williams started to walk toward the Buick, Quarterman drove his vehicle alongside the Buick. As Williams entered the right rear passenger compartment of the Buick, Quarterman saw him holding the bag of marijuana in his right hand. When the Buick drove away, Quarterman followed. He also called a "reaction take-down team" and provided them with a description of the Buick. When the reaction take-down team stopped the Buick approximately two blocks away, Quarterman exited his undercover vehicle, approached the rear passenger compartment of the Buick, opened the door, and asked Williams to step out. When Williams stepped out, "he dropped the bag of marijuana to the ground." Quarterman retrieved it and arrested Williams. The contents of this bag tested positive for the presence of marijuana.

After arresting Williams, Agents Quarterman and Lucas, along with two other agents, returned to 603 Emerald Drive and found McKay standing in front of the building. When Quarterman approached McKay, he stated "Police! I need to talk to you for a second." McKay immediately raised his hand and said, "I didn't sell my man no weed." The agents then placed McKay under arrest.

Jeffrey Barker, the chief construction inspector for the Housing Authority of Savannah, testified that State's Exhibit 1 was a copy of a map for Frazier Homes and that Frazier Homes is a public housing project. Barker explained that the map was prepared from blueprints which were drawn to scale and prepared by architects. Barker further testified that he was personally familiar with the area depicted in Exhibit 1 and that it appeared to be accurate and correct. These blueprints show a building located at 603A and 603B Emerald Drive.

This exhibit was admitted into evidence.

We find this evidence sufficient to support McKay's convictions under OCGA §§ 16-13-30 (j) (1) and 16-13-32.5. *Jackson v. Virginia*, supra.

2. McKay contends Count 2 of the indictment fails to allege a violation of OCGA § 16-13-32.5 (b). Count 2 charges McKay with the offense of "SALE OF MARIJUANA WITHIN 1000 FEET OF A HOUSING PROJECT OCGA § 16-13-32.5." It further alleges that "TYRONE A. MCKAY AKA JAUDON ANTHONY MCKAY . . . on or about September 27, 1995, did unlawfully sell marijuana, within 1000 feet of a housing project. . . ." McKay asserts Count 2 of the indictment is insufficient because it alleges an unlawful *sale* of marijuana, and OCGA § 16-13-32.5 (b) makes it unlawful only to "manufacture, distribute, dispense, or possess with intent to distribute . . . marijuana . . . in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project. . . ." OCGA § 16-13-32.5 (b).

We must first determine whether this enumeration has been preserved for our review. The State claims McKay failed to preserve this issue because he raised it for the first time on appeal. McKay contends he preserved it through a motion for directed verdict of acquittal. However, the record shows that McKay never challenged the validity of the indictment in this motion. McKay did file a one-page motion for new trial in which he asserted "[t]he verdict is contrary to law." After a hearing, the trial court denied this motion in a one-line order. The record contains no transcript of the hearing and no information about the specific grounds for McKay's new trial motion.

In Georgia, a defendant has a right to be tried upon an indictment which is perfect in form and substance. *State v. Black*, 149 Ga. App. 389, 391 (4) (254 SE2d 506) (1979); *State v. Stamey*, 211 Ga. App. 837, 838 (1) (440 SE2d 725) (1994). However, this right can, under certain circumstances, be waived if a defendant fails to timely challenge the indictment. See *Lanier v. State*, 5 Ga. App. 472, 476-477 (63 SE 536) (1909).

A challenge to an indictment is typically made through a demurrer to the indictment. "A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment." *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d

38) (1977). See also OCGA §§ 17-7-113;[1] 17-7-111;[2] Uniform Superior Court Rule 31.1.[3]

"[A] special demurrer is waived if not raised before pleading to the merits of the indictment." *Eubanks*, supra at 486. On the other hand, because a "general demurrer attacks the legality of an indictment, it is permissible to raise this ground after verdict by a motion in arrest of judgment even if there was no earlier objection. [Cits.] . . . [A] motion in arrest asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime. [Cit.]" Id. at 485-486. Likewise, an oral objection or motion to quash based upon the same grounds as a general demurrer can be asserted anytime during the trial. *Gilmore v. State*, 118 Ga. 299-300 (1) (45 SE 226) (1903); *Pullen v. State*, 199 Ga. App. 881 (406 SE2d 283) (1991). Compare *Perkins v. State*, 151 Ga. App. 199, 206 (7) (259 SE2d 193) (1979) (motion to quash "because of objection to form is essentially the same as a special demurrer and must be made in writing before the plea"), overruled on other grounds; *Chance v. State*, 154 Ga. App. 543, 544 (268 SE2d 737) (1980).

"A motion for directed verdict of acquittal is not the proper way to contest the sufficiency of an indictment. A motion for a directed verdict of acquittal . . . addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment. [Cit.] When an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law and, upon the trial, no demurrer to the indictment is interposed and the accused is convicted under the indictment and judgment is entered on the verdict, the accused's proper remedy is a motion in arrest of judgment or habeas corpus. [Cit.]" *Williams v. State*, 162 Ga. App. 350, 351 (291 SE2d 425) (1982). See also *Echols v. State*, 187 Ga. App. 870, 871-872 (371 SE2d 682) (1988); *Lancaster v. State*, 83 Ga. App. 746, 760 (2) (64 SE2d 902) (1951). A motion for new trial is not the proper method to attack the sufficiency of an indictment and does not provide a basis for this Court to review the indictment. *Boswell v. State*, 114 Ga. 40, 41-42 (1), (2) (39 SE 897) (1901); *Thompson v. State*, 58 Ga. App. 452-453 (198 SE 805) (1938).

---

[1] This statute provides: "All exceptions which go merely to the form of an indictment or accusation shall be made before trial."

[2] This statute provides: "If the defendant, upon being arraigned, demurs to the indictment, . . . the demurrer . . . shall be made in writing. If the demurrer . . . is decided against the defendant, he may nevertheless plead and rely on the general issue of 'not guilty.'"

[3] This rule provides: "All motions [and] demurrers . . . shall be made and filed at or before time of arraignment, unless time therefor is extended by the judge in writing prior to trial. . . ."

Based on the above, it is clear that objections to defects in an indictment can be waived, except when " '[the] defects are so great that the accusation is absolutely void.' *Lanier v. State*, [supra at 472 (2)]." *Goldstein v. State*, 26 Ga. App. 651 hn. 1 (107 SE 176) (1921). See also *Tennesson v. State*, 214 Ga. App. 103 (447 SE2d 152) (1994); *Staton v. State*, 165 Ga. App. 572 (1) (302 SE2d 126) (1983). However, when a claim that an accusation or indictment is absolutely void is not properly asserted in the trial court, it can be reviewed on appeal only through a habeas corpus proceeding. *Williams*, supra; *Lancaster*, supra.

Here, McKay apparently claims that Count 2 of the indictment is void because it fails to allege a crime under OCGA § 16-13-32.5 (b). However, this claim is not properly before us because McKay failed to object to the indictment in any manner before or during trial and did not move to arrest the judgment after his conviction. "The issue of whether the indictment underlying appellant['s] conviction[] was void must await determination until such time as [appellant avails himself] of the proper procedures for attacking the conviction on that basis." *Williams*, supra at 353.

3. McKay contends the trial court erroneously sentenced him as a recidivist based upon two prior convictions. According to McKay, the trial court could not consider these convictions because the State failed to prove the voluntariness of his guilty pleas to the two prior offenses. However, McKay failed to object to the use of these convictions in the sentencing portion of the trial. As a result, we cannot review this alleged error on appeal. *Simmons v. State*, 222 Ga. App. 447 (1) (474 SE2d 253) (1996); *Moody v. State*, 206 Ga. App. 387, 391 (6) (425 SE2d 397) (1992); *Darty v. State*, 188 Ga. App. 447-448 (373 SE2d 389) (1988).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 29, 1998 —

*June E. Fogle*, for appellant.
*Spencer Lawton, Jr., District Attorney, Michael K. Dennard, Assistant District Attorney*, for appellee.